UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMIE MOORE | CIVIL ACTION |
| VERSUS | NO. 20-2366 |
| MARRIOTT INTERNATIONAL, INC., ET AL. | SECTION "R" (1) |

### ORDER AND REASONS

Plaintiff, Jamie Moore, moves to remand this matter to state court.[1] Defendants Marriott International, Inc. and Starwood Hotels & Resorts Worldwide, LLC (incorrectly named as Marriott Hotel Services, Inc.) oppose the motion.[2] Because the defendants have failed to carry their burden of showing complete diversity among the parties, the Court grants plaintiff's motion.

### I.  BACKGROUND

This case arises from an incident in which defendant Redin Cantillano allegedly raped plaintiff Jamie Moore.[3] According to plaintiff's complaint, she visited Le Meridien Hotel in New Orleans on or around July 7, 2019.[4]

---

[1]  R. Doc. 8.
[2]  R. Doc. 13.
[3]  *See* R. Doc. 1-1.
[4]  R. Doc. 1-1 at 2, ¶ 7.

She states that Cantillano, a groundskeeper at the hotel, lured her into a guest elevator, took her to an upper floor, and raped her in a stairwell.[5] Cantillano allegedly left her naked and unconscious, and hotel staff found her hours later in the elevator lobby of an upper level floor.[6]

Plaintiff further alleges that a subsequent medical examination confirmed that Cantillano's semen was found in plaintiff's vagina, mouth, and chest.[7] Cantillano was allegedly arrested and charged with raping plaintiff.[8] But he is currently a fugitive from justice, having posted bond and fled from the authorities.[9] Plaintiff alleges that Cantillano was domiciled in Louisiana.[10]

On June 9, 2020, plaintiff filed a complaint in the Civil District Court for the Parish of Orleans.[11] Along with Cantillano, plaintiff sued Marriott International, Inc. and Marriott Hotel Services, Inc. (collectively "Marriott"), National Service Group & Associates, Inc. and National Service Group & Associates of NOLA, Inc. (collectively "NSG"), Jean-Charles Robert, and Glenn Taylor. Marriott allegedly owned and operated the Le Meridien

---

5   *Id.*
6   *Id.*
7   *Id.* at ¶ 8.
8   *Id.* at 3, ¶ 12.
9   *Id.*
10  *Id.* at 1.
11  *Id.*

2

Hotel.[12]   NSG is allegedly a contractor that provides janitorial and maintenance staff, including Cantillano, for Le Meridien.[13]   Robert and Taylor were allegedly employees of Marriott.[14]   Robert was Le Meridien's general manager, and Taylor was the director of loss prevention.[15]

Plaintiff's complaint sets out fourteen counts against the defendants.[16] Against Cantillano, she brings claims for sexual battery and intentional infliction of emotional distress.[17]  She further alleges that Marriott and NSG were dual employers of Cantillano and asserts vicarious liability against both.[18]  She also brings claims for negligent hiring,[19] negligent supervision,[20] an innkeeper's failure to maintain safe premises,[21] and negligent failure to protect a hotel guest.[22]

---

[12]   *Id.* at 2, ¶ 9.
[13]   *Id.* at 3, ¶ 13.
[14]   *Id.* at 4-5, ¶¶ 18, 20.
[15]   *Id.*
[16]   *Id.* at 6-9, ¶¶ 24-38.
[17]   *Id.* at 6. ¶¶ 1-2.
[18]   *Id.* at ¶¶ 26-27.
[19]   *Id.* at 6-8, ¶¶ 28, 31, 33, 36.  Plaintiff asserts these claims against Marriott, NSG, Robert, and Taylor.
[20]   *Id.* at 7-8, ¶¶ 29, 32, 34, 37.  Plaintiff asserts these claims against Marriott, NSG, Robert, and Taylor.
[21]   *Id.* at 7, ¶ 30.  Plaintiff asserts this claim against Marriott.
[22]   *Id.* at 8, ¶ 35.  Plaintiff asserts this claim against Robert.

On August 26, 2020, the Marriott defendants removed to this Court and invoked diversity jurisdiction under 28 U.S.C. § 1332.[23] Marriott asserts, contrary to plaintiff's complaint,[24] that Cantillano is a foreign national who was domiciled in Honduras at the time the complaint was filed.[25] Marriott also states that it is a Delaware company with its principal place of business in Bethesda, Maryland.[26] According to Marriott, NSG is a Florida company with its principal place of business in Ft. Lauderdale, Florida.[27] Finally, it asserts that plaintiff fraudulently joined Robert and Taylor—who are both allegedly domiciled in Louisiana—solely for the purposes of defeating diversity.[28] Because defendants failed to demonstrate that Cantillano is a foreign national domiciled in Honduras at the time the action was filed, the Court lacks diversity jurisdiction in this matter. The Court need not consider the defendants' other arguments.

---

[23]  R. Doc. 1.
[24]  R. Doc. 1-1 at 1, ¶ 1.
[25]  R. Doc. 1 at 4, ¶ 9.
[26]  *Id.* at 2-3, ¶¶ 3-4.
[27]  *Id.* at 4, ¶¶ 7-8.
[28]  *Id.* at 3, ¶¶ 5-6.

## II. LEGAL STANDARD

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g.*, *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, No. 95-668, 1995 WL 419901, at *2 (E.D. La. July 13 1995). Though the Court must remand the case to state court if at any time before the final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Foreign nationals are not considered diverse if they

are "lawfully admitted for permanent residence in the United States and are domiciled in the same State" as the adverse parties. 28 U.S.C. § 1332(a)(2).

### III. DIVERSITY OF REDIN CANTILLANO

Plaintiff argues that the removing defendants failed to carry their burden of proving that Redin Cantillano is a diverse party.[29] As noted, the Court does not have jurisdiction over actions between citizens of a state and a foreign national who is domiciled in the same state and is a lawful permanent resident of the United States. *See id.*

To carry their burden of proving the Court has jurisdiction, defendants must point to evidence showing that, at the time plaintiff filed her complaint, Cantillano was (1) a citizen of a foreign state who was (2) not lawfully admitted for permanent residence in the United States and (3) not domiciled in Louisiana. *Id.* Courts look to an alien litigant's official immigration status to determine whether he or she has been admitted to the United States for permanent residence. *See Vargas v. Traylor Bros., Inc.*, No. 09-2521, 2009 WL 6472945, at *2 (S.D. Tex. Nov. 4, 2009) (citing *Foy v. Schantz, Schatzman & Aaronson*, 108 F.3d 1347, 1348 (11th Cir. 1997); *Karazanos v. Madison Two Associates*, 147 F.3d 624, 627-28 (7th Cir. 1998); *Funygin v.*

---

[29] *Id.* at 6-7.

*Yukos Oil Co.*, No. 04-4821, 2005 WL 1840147, at *2 (S.D. Tex. July 28, 2005)). "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'" *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974). A person changes domicile when the person (1) takes up residence in a different domicile and (2) has the intention to remain there. *Id.*

There is no admissible evidence here to show that Cantillano is a diverse party. Defendants have not submitted Cantillano's passport, immigration records, or anything else sufficient for the Court to find even that Cantillano is a Honduran citizen, as they allege.[30] *Cf. Prince v. Transportes Zuazua LLC*, No. 17-21, 2017 WL 9535081, at *1-2 (S.D. Tex. May 10, 2017) (finding that "[t]he evidence that [defendant] is a Mexican citizen residing in Mexico is much stronger than the evidence that he is a permanent resident in Texas," based on a photocopied passport, a Border Crossing Card, a Mexican driver's license, and a Mexican voter registration card).

---

[30] R. Doc. 1 at 4, ¶ 9.

7

Instead, defendants rely solely on an exhibit attached to their opposition to plaintiff's motion to remand.[31]  The exhibit contains a screenshot, purportedly of a conversation on Facebook.[32]  The screenshot includes five posts: one by "Dina Cantillano," two by "Redin Cantillano," one by "Marvin Marroquin," and one by "Juan Flores Aldas."[33]  In Marroquin's post, he asks "[w]here are you old man."[34]  The user going by Redin Cantillano replied to Marroquin, but his reply is hidden.[35]  In a separate post, the Redin Cantillano user states, without any context, "Homduras [sic.]"[36]

Defendant argues that this screenshot is sufficient to show that Redin Cantillano was domiciled in Honduras as of May 5, 2020—over one month before plaintiff filed her lawsuit.[37]  But, as plaintiff points out, there is no indication that the Redin Cantillano depicted in this exhibit is the same individual who is a defendant in this lawsuit.[38]  Nor is it clear that the "Homduras" response was given by the Redin Cantillano in the exhibit in response to Marroquin's question, "Where are you old man?"  It is not even

---

31   R. Doc. 13-8 at 1.
32   *See* R. Doc. 13 at 11.
33   R. Doc. 13-8 at 1.
34   *Id.*
35   *Id.*
36   *Id.*
37   R. Doc. 13 at 11.
38   R. Doc. 16 at 2.

8

apparent that the screenshot is taken from Facebook—the five posts are shown in the exhibit without any context. Additionally, although the exhibit purports to show that the "Homduras" statement was made 23 weeks from the time the screenshot was taken,[39] there is basis for the Court to discern when the screenshot was captured.

The screenshot is plainly inadmissible. Under Federal Rule of Evidence 901, the proponent of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901 sets out a non-exhaustive list of ways to authenticate evidence, which include submitting "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). Defendants did not submit any testimony, such as an affidavit, to authenticate the screenshot. Further, the screenshot is not a self-authenticating document under Federal Rule of Evidence 902.[40] Accordingly, the Court finds that it is inadmissible.

Even if the screenshot were admissible, it does not provide a basis for the Court to find that Cantillano is a diverse party under 28 U.S.C. § 1332(a)(2). At best, the statement shows that Cantillano was in Honduras

---

[39] R. Doc. 13-8 at 1.
[40] This rule provides that certain types of evidence, such as official documents, certified public records, official publications, newspapers and periodicals, and others need not be authenticated with "extrinsic evidence." Fed. R. Evid. 902(1)-(14).

23 weeks from the time the screenshot was taken. That is insufficient to show that Honduras was his domicile, *i.e.*, "his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Mas*, 489 F.2d at 1399.

The Court finds that defendants have failed to carry their burden of proving complete diversity among the parties. Because the Court's jurisdiction depends on complete diversity, *see Owen Equip. & Erection Co.*, 437 U.S. at 373, the Court must grant plaintiff's motion to remand.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion to remand.

New Orleans, Louisiana, this __10th__ day of December, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE